IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ASHLEY DIXON,

       Plaintiff,

       v.

CITY OF ATLANTA,
OFFICER MATTHEW GORDON,
in his individual capacity,
and
OFFICER JEFF CANTIN,
in his individual capacity

       Defendants.

CIVIL CASE NO.:

## **COMPLAINT FOR DAMAGES**

COMES NOW Ashley Dixon, a Plaintiff in the above styled action and files this her Complaint for Damages.

This is a civil rights action under 42 U.S.C. § 1983, the First, Fourth and Fourteenth Amendments to the United States Constitution and Georgia law. Ashley Dixon ("the Plaintiff") alleges that she was illegally and unconstitutionally

detained and arrested by Defendant Officer Jeff Cantin of the City of Atlanta Police

Department, and Officer Matthew Gordon, and maliciously prosecuted in violation

of the Fourth Amendment of the United States Constitution and Georgia law.

Plaintiff also alleges that she was arrested and prosecuted in retaliation for the

exercise of her First Amendment rights, and that Defendant City of Atlanta has an

unconstitutional policy and practice of providing inadequate training to its officers

which resulted in the false arrest and malicious prosecution that is the subject of

this suit. Finally, Plaintiff alleges that a final policy maker within the City of

Atlanta – Officer Matthew Gordon - ordered the arrest of the Plaintiff and insisted

on her prosecution as a result of Plaintiff's First Amendment protected activity.

**PARTIES**

1.

Plaintiff Ashley Dixon is a resident of the State of Georgia, United States

citizen, and over the age of eighteen.

2.

Defendant Jeff Cantin is an Officer employed by the City of Atlanta Police

Department. The headquarters of the City of Atlanta Police Department are located

at 226 Peachtree St SW, Atlanta GA 30303 in Fulton County, Georgia. Defendant Jeff Cantin may be served at this address. At all times relevant to this lawsuit, Defendant Jeff Cantin acted under the color of law. Defendant Jeff Cantin is sued in his individual capacity.

3.

Defendant Matthew Gordon is an Officer employed by the City of Atlanta Police Department. The headquarters of the City of Atlanta Police Department are located at 226 Peachtree St SW, Atlanta GA 30303 in Fulton County, Georgia. Defendant Matthew Gordon may be served at this address. At all times relevant to this lawsuit, Defendant Matthew Gordon acted under the color of law. Defendant Matthew Gordon is sued in his individual capacity.

4.

Defendant City of Atlanta ("the City") is a political subdivision of the State of Georgia, which has the capacity to sue and be sued. The City can be served at: 55 Trinity Ave. SW, Atlanta GA 30303. At all times relevant to this lawsuit, Defendant City of Atlanta acted under the color of law.

5.

All defendants reside in the Northern District of Georgia.

## JURISDICTION AND VENUE

6.

This case presents a federal question and this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

7.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

8.

This Court has personal jurisdiction of the Defendants under 28 U.S.C. § 1367 and GA. CONST., art. I, § 1, ¶¶ V, XIII.

9.

Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b) because all actions complained of occurred within the boundaries of this judicial district and Defendants reside within this district.

10.

All of the parties herein are subject to the jurisdiction of this Court.

11.

Attorney's fees are authorized under 42 U.S.C. § 1988.


**FACTUAL ALLEGATIONS**

12.

On May 14, 2022 at approximately 6:30pm Plaintiff arrived at Freedom Park to attend the March for the Future of Atlanta – a peaceful protest.

13.

From 6:30-7:30pm, a group of about 150 people walked through Atlanta neighborhoods with signs, drums, and tree branches from the forest the city intended to cut down. The march was peaceful, and participants were met with

supportive honking and words of encouragement from passersby's. The participants completed their march at around 7:30 when they arrived at Inman Park – a public park. Ms. Dixon left the protest before the protesters arrived to Inman Park.

14.

When protesters arrived at the Park the police surrounded the Park and began arresting individuals in the Park. The arrests were made pursuant to an order issued by Defendant Gordon to arrest everyone who participated in the protest. During arrests police were using tasers. Plaintiff Dixon is not certain whether those arrests occurred before or after her arrest and did not witness them.

15.

Ms. Dixon decided to go back to the park (on the request of a friend) to sit with an elderly woman who could not attend the rally but wanted to be there to support. However, once Ms. Dixon got to the park, the elderly woman had already left / did not need someone to sit with her. Ms. Dixon was about to head out but began to worry about friends when she saw a large number of police cars speeding towards the area, so she decided to walk on the sidewalk back towards the march

and try and meet her friends in order to walk with them.

16.

Plaintiff carried no protest signs and was not approached by police until Melanie Silverstein, a union organizer Plaintiff was acquainted with passed her on the sidewalk and said hello. Ms. Silverstein was carrying a protest sign.

17.

At that time – and while Plaintiff turned to face Ms. Silverstein - Defendant Cantin appeared out of nowhere and handcuffed Ms. Dixon and Ms. Silverstein together after asking what Ms. Silverstein had in her hands but not waiting for an answer.

18.

Ms. Dixon asked what they were being arrested for - pointing out that they were simply standing on a sidewalk. Another woman nearby started filming the arrest, and a different police officer aggressively grabbed that woman's wrist and started threatening to arrest her as well. After a few moments, they let that woman go.

19.

Defendant Cantin was then joined by two other officers who handcuffed Plaintiff and Ms. Silverstein individually. Plaintiff and Ms. Silverstein were instructed to get inside the police vehicle and were never informed of their charges.

20.

Plaintiff and Ms. Silverstein were brought to the Atlanta City Detention Center, where their mugshots, a retina scan, and fingerprints were taken.

21.

During her processing at the jail Plaintiff was subjected to degrading and humiliating treatment by the officers.

22.

Plaintiff was prosecuted in the Atlanta Municipal Court where her prosecution ended in a dismissal on June 1, 2022.

## COUNT I
## 42 U.S.C. § 1983: Unlawful Seizure in violation of the Fourth Amendment
## (As to Defendants Cantin, and Gordon)

### 23.

Paragraphs 1 through 22 are hereby re-alleged as if fully pled herein.

### 24.

The conduct of Defendants Cantin and Gordon in causing and procuring the arrest and detention of Plaintiff without arguable probable cause constituted an unreasonable seizure of her person in violation of the Fourth Amendment.

### 25.

The law being clearly established in 2022 that an officer of the state cannot cause someone to be arrested and prosecuted without arguable probable cause, Defendants are not entitled to qualified immunity.

## COUNT II
## 42 U.S.C. § 1983: Malicious Prosecution in violation of the Fourth Amendment
## (As to Defendants Cantin, and Gordon)

### 26.

Paragraphs 1 through 22 are hereby re-alleged as if fully pled herein.

27.

Defendants Cantin and Gordon caused a criminal prosecution to be initiated against Plaintiff for the offense of pedestrian in the roadway.

28.

Defendant Cantin not only caused the prosecution to be initiated, and arrest to be executed, but he caused the prosecution to continue based on his arrest warrant affidavit, police report, and citation - such that Ms. Dixon had to endure a criminal case which ultimately terminated in her favor. Defendant Gordon is liable for said prosecution due to his ordering Defendant Cantin to initiate the arrest and prosecution.

29.

Defendants knew that there was no probable cause to support the charges against Plaintiff, but they persisted in initiating, participating in, and assisting with that prosecution despite the complete lack of probable cause.

30.

Said prosecution was based upon statements by Defendants that were either knowingly false or made with reckless disregard for the truth.

31.

Accordingly, said prosecution was carried on maliciously and without probable cause, and it was ultimately terminated in Plaintiff's favor.

32.

The law being clearly established in 2022 that an officer of the state cannot knowingly make false statements in order to cause someone to be prosecuted for an offense that is not supported by probable cause, Defendants are not entitled to qualified immunity.

**COUNT III**
**Municipal Liability**
**(As to Defendant City of Atlanta)**

33.

Paragraphs 1 through 22 are hereby re-alleged as if fully pled herein.

34.

The City is liable under the Monell doctrine due to its failure to provide proper training and because there was a decision by a final policy maker to arrest Plaintiff or to conduct arrests in cases such as Plaintiff's.

35.

The City has a long history of not adequately training its officers when it comes to protecting and respecting citizens' First Amendment rights which includes violating citizens' rights to film the police that ultimately resulted in a contempt order against the City in 2015.

36.

The City also routinely arrests protesters under the pretext of violating pedestrian in the roadway laws with numerous instances of such arrests occurring during 2020 protests, a mass arrest on January 6, 2021 that is the subject of a pending lawsuit before this Court (Baker v. City of Atlanta et al. 1:21-cv-04186-MLB) where 19 protesters were corralled and arrested for pedestrian in the roadway within minutes of starting to protest, and another mass arrest on September 8, 2021 when about a dozen protesters were arrested after protesting in front of councilwoman Archibong's house (also subject of a pending lawsuit before this Court Gadomski v. City of Atlanta et al. 1:23-CV-4036-TWT) where protesters were likewise charged with pedestrian in the roadway. Baker case – much like the present case and Gadomski case involved an order given by a high ranking officer

to arrest all protesters on the scene. This leads to a conclusion that there is an official policy or directive by final policy maker(s) within the City of Atlanta to engage in practice of arresting protesters under the pretext of violating pedestrian in the roadway laws and the City – if not deliberately promoting this policy – is at the very least deliberately indifferent to it.

37.

An example of an arrest of a protester under the pretext of violating pedestrian in the roadway laws occurring during 2020 protests referred to above is a case pending in this Court styled <u>Schilling v. Doherty</u>, Case No.: 1:22-cv-03772-MLB. In this case a high-ranking officer Lieutenant Kevin Knapp who was in charge of the City of Atlanta police unit at the scene singled out several individuals from a crowd of protesters by pointing them out to other APD officers, identifying them as the ones that should be arrested by saying: "This one has to go, this one has to go…" while pointing at individual protesters to be arrested. There was no indication or explanation on behalf of Lieutenant Knapp as to why those individuals should be arrested. Some time after this identification for the purpose of the arrest Donovan Schilling was arrested under the pretext of an alleged

13

violation of pedestrian in the roadway statute which allegedly occurred after the

above mentioned identification and thus could not possibly have formed a basis for

Lieutenant Knapp's singling out Mr. Schilling for arrest. Schilling was arrested by

Lieutenant Knapp and officer Michael Doherty. Schilling sued alleging – inter alia

– first amendment retaliation and the case is currently pending in this Court.

Lieutenant Knapp has since been promoted to Captain.

There are numerous other instances of similar pretextual arrests of protesters

for pedestrian in the roadway violations from 2020 protest period that further

discovery will reveal - since not all have made it to the docket of this Court as

Sec.1983 cases.

38.

A high ranking officer in the above mentioned Baker case was Lieutenant

Gary Harper. Harper has since been promoted to Major. A first amendment

retaliation claim has likewise been brought in the Baker case.

39.

In the present case the arrests occurred in Inman Park – a public park. As

mentioned - this mass arrest of approximately 15 individuals followed a different

14

"Stop Cop City" protest and was a carefully executed action where only those protesters who were deemed more vocal / more dedicated to the cause were targeted out of a much larger group of protesters. Those protesters were ultimately arrested in a public park where they could not have possibly been violating pedestrian in the roadway laws. Indeed all but one of the May 14, 2022 arrestees had their charges dismissed, and the sole remaining one is currently awaiting an accusation in the State Court of Fulton County but has not been accused to date. Many of the arrested protesters sent *ante litem* notices to the City of Atlanta where they indicated their intention to file lawsuits and assert – among other claims – a claim of first amendment retaliation.

40.

As alleged above Plaintiff and Ms. Silverstein were arrested on a public sidewalk while walking home from the protest and charged with pedestrian in the roadway. Dixon and Silverstein were singled out by Major Jeff Cantin because one of them was carrying a "Stop Cop City" sign. Dixon and Silverstein were arrested by Major Cantin who was assisted by other officers in arresting the two. Dixon's and Silverstein's charges were likewise dismissed.

15

41.

Ryan Michael Seal was a reporter who was also arrested in Inman Park on
May 14, 2022 on pedestrian in the roadway charges and was transported to the City
of Atlanta Detention Center. There Mr. Seal was released without charges.
However, his reporter's notebook was confiscated and never returned. Upon
information and belief Mr. Seal was arrested because he was deemed to be a part of
the "Stop Cop City" movement and because it was expected that his notebook
would yield valuable intelligence about the movement. In other words Mr. Seal
was arrested because of his First Amendment protected activities and in retaliation
for those activities.

42.

The complaint of Michael Watchulonis in Watchulonis v. City of Atlanta
1:23-cv-2204-TCB - yet another case pending in this Court – alleges First
Amendment violations surrounding the detention of Mr. Watchulonis – a reporter –
where Mr. Watchulonis was interrogated by Major Jeff Cantin - **the Defendant in
this very case** - and a GBI agent Mike Carter, threatened with arrest if he does not
delete his footage, and then released without charges. That particular complaint

alleges Defendant Cantin implying Watchulonis was one of the "little forest people" - an apparent derogatory reference to the opponents of the proposed police training facility – clearly revealing Defendant Cantin's sentiment about the political issue at hand. He then (in <u>Watchulonis</u> case) goes on to interrogate Watchulonis and illegally demand deletion of his footage under threat of an arrest and confiscation of his filming gear. To say that the City is not aware of repeated conduct of high ranking officers such as Major Cantin is to claim willful blindness. Said complaint further contains a long list of First Amendment violations by the City of Atlanta of the right to film described therein which are hereby incorporated by reference in order to save space and cut down on the verbosity of the present complaint.

43.

The above described numerous recent instances of pretextual arrests of protesters on pedestrian in the roadway charges, as well as more broad examples of First Amendment violations committed by members of APD and with full knowledge of Defendant City of Atlanta (as described in more detail in <u>Watchulonis</u> complaint) show deliberate indifference by the City as to the need to

properly train officers on First Amendment protections generally and as to

illegality of using pedestrian in the roadway charges as a pretext to retaliate and /

or attempt to suppress protesters' speech. Had officers been properly trained on the

first amendment protections as it comes to protests the constitutional violations

alleged in the present case would not have occurred. The involvement of the high

ranking officers in the above mentioned violations (Lieutenant, Captain and Major)

and the fact that said officers are routinely promoted subsequent to those violations

show that the City has full knowledge (let alone constructive knowledge) of those

violations and is not only deliberately indifferent to them but is in fact actively

promoting them. This knowledge is further demonstrated by the fact that the Baker

mass arrest was discussed at a City Council meeting soon after it happened –

negating any possible claim of ignorance on behalf of the City.

44.

Plaintiff alleges that Defendant Gordon acted as final policy maker for the

City of Atlanta in the incident at issue in this case because his order to arrest

protesters for pedestrian in the roadway under the circumstances at hand was not

reviewable in any way – and therefore Defendant Gordon was delegated final

18

policy making authority when it came to the decision of using a particular criminal charge to suppress the protest at hand. Defendant Gordon's decision was not an individualized case by case decision of reviewing each individual's conduct separately – but rather a categorical policy decision to arrest all individuals that were part of this protest – regardless of what they were actually doing and regardless (as in case of Lev Omelchenko in the Gadomski case and Ryan Seal mentioned above) of whether they were even protesting.

45.

Defendant Cantin also acted pursuant to direct instructions from a final City of Atlanta policy maker Defendant Gordon.

46.

By virtue of issuing an order to a large group of officers to "arrest all members of the group" and by virtue of his rank Defendant Gordon acted as a final policy maker for the City of Atlanta in the incident at issue in this case.

## COUNT IV
## O.C.G.A. § 51-7-40: Malicious Prosecution
### (As to Defendants Cantin, and Gordon)

47.

Paragraphs 1 through 22 are hereby re-alleged as if fully pled herein.

48.

Officers Cantin and Gordon initiated a criminal prosecution against Ms. Dixon for a misdemeanor offense, and they knew or should have known that no arguable probable cause existed to believe that Ms. Dixon had violated any laws or committed any crime recognized by law.

49.

Officers Cantin and Gordon initiated and maintained the arrest and prosecution of Ms. Dixon with malice, as interpreted under Georgia law.

50.

This criminal prosecution terminated favorably for Ms. Dixon.

51.

As a result of the arrest and prosecution, Ms. Dixon has suffered physical, emotional, mental and financial injury, entitling her to recover nominal,

compensatory and punitive damages against Defendant Officers Cantin and

Gordon for the loss of her rights under this claim, in an amount to be determined

by the enlightened conscience of the jury.

## COUNT V
### 42 U.S.C. § 1983: First Amendment Retaliation in violation of the First Amendment
### (As to Defendants Cantin, and Gordon)

52.

Paragraphs 1 through 22 are hereby re-alleged as if fully pled herein.

53.

Defendants deliberately initiated and or caused arrest and prosecution

against this Plaintiff because Plaintiff exercised her rights to free speech and

participated in a protest. Ms. Dixon was targeted for arrest because an assumption

was made (based on her friend carrying a sign) that she was part of a protest.

Plaintiff Dixon would not have been arrested but for her exercise of her First

amendment rights.

54.

Defendants' actions were meant to punish the Plaintiff for her exercise of her

First Amendment rights and to intimidate her from further speaking.

21

55.

The intentional actions of Defendants in falsely accusing Plaintiff of a misdemeanor crime interfered with Plaintiff's right of freedom of speech and expression in violation of the First Amendment to the US Constitution.

56.

The law being clearly established in 2022 that an officer of the state cannot make false statements or make an arrest to retaliate against a person for their exercise of freedom of speech, Defendants are not entitled to qualified immunity.

57.

Ms. Dixon alleges that she was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech or expression had not been arrested. Indeed there were other individuals walking on the same street that were not arrested because they were not engaged in speech.

58.

Ms. Dixon alleges that no person has been arrested for being a Pedestrian In the Roadway when they were not engaged in the type of protected speech Ms. Dixon was engaged in.

59.

Had Ms. Dixon not been protesting Officers Cantin and Gordon would not have arrested her. This is evidenced by the common knowledge that officers typically exercise their discretion not to arrest in cases of jaywalking even when probable cause is present. Ms. Dixon asks that the Court take judicial notice of same or allow Ms. Dixon to gather evidence of such typical exercise of discretion during discovery. Ms. Dixon alleges that Officer Cantin had no arguable probable cause to arrest her for any crime and nothing in this complaint should be construed as an admission or allegation that arguable probable cause existed for any crime.

60.

Retaliatory motive is further evidenced by the fact that Defendant Gordon ordered the arrest of all members of the group without regard for what any individual member was doing.

**DAMAGES**

61.

Paragraphs 1 through 60 are hereby re-alleged as if fully pled herein.

62.

As a direct and proximate result of the above described conduct of Defendants, Plaintiff was unreasonably and unlawfully arrested and prosecuted without probable cause and as a retaliation for exercising her First Amendment rights, was imprisoned and deprived of her liberty, was subjected to physical restraint, confinement, and mental suffering and emotional distress that is expected to continue into the future, and was forced to incur other economic and non-economic losses for which Defendants are liable to Plaintiff in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

63.

The aforementioned misconduct of Defendants rose to such a level of bad faith, willfulness, and reckless disregard as to authorize the imposition of punitive damages against each one of them.

64.

Plaintiff is also entitled to recover reasonable attorney's fees and expenses of litigation pursuant to 28 U.S.C. §1988.

**WHEREFORE**, Plaintiff demands the following:

a) That this action be tried by a jury;

b) That judgment be entered in favor of Plaintiff and against each Defendant for nominal, special, compensatory and punitive damages for each violation of the Plaintiff's constitutional rights in an amount to be determined by the enlightened conscience of fair and impartial jurors;

c) That Plaintiff be awarded attorney's fees and reasonable expenses of litigation;

e) That all costs of this action be taxed against Defendants; and

f) That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 10th day of May 2024.

/s/Drago Cepar, Jr.
Drago Cepar, Jr.
Georgia Bar No. 142362

1900 The Exchange, Suite 490
Atlanta, Georgia 30339
Phone: 770-940-3233
Fax: 770-874-2987
dcepar@gmail.com

25