UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ASHLEY DIXON,<br><br>   Plaintiff,<br><br>v.<br><br>CITY OF ATLANTA, et al.,<br><br>   Defendants. | CIVIL ACTION NO.<br>1:24-CV-02061-JPB |

## ORDER

This matter is before the Court on the City of Atlanta's ("the City") Motion to Dismiss [Doc. 11]. This Court finds as follows:

### BACKGROUND[1]

On May 14, 2022, Ashley Dixon ("Plaintiff") attended and took part in a peaceful protest called the "March for the Future of Atlanta." [Doc. 1, p. 5]. From 6:30 to 7:30 PM, a group of about 150 people marched from Freedom Park to Inman Park with signs, drums and tree branches. Id. at 5–6. Plaintiff contends that upon reaching Inman Park, "the police surrounded the Park and began arresting individuals in the Park" pursuant to an order issued by Officer Matthew Gordon.

---

[1] Because this case is before the Court on a motion to dismiss, the facts are presented as alleged in the Complaint.

Id. at 6.  According to Plaintiff, Officer Gordon's order was "to arrest everyone who participated in the protest."  Id.

Plaintiff was among those arrested.  Plaintiff asserts that despite doing nothing wrong and breaking no laws, Officer Jeff Cantin arrested her for pedestrian in the roadway.  Id. at 7, 15.  The charges against Plaintiff were ultimately dismissed.  Id. at 8.

Based on the foregoing, Plaintiff filed suit against the City, Officer Gordon and Officer Cantin asserting the following causes of action:  (1) unlawful seizure in violation of the Fourth Amendment; (2) malicious prosecution in violation of the Fourth Amendment; (3) municipal liability; (4) malicious prosecution in violation of Georgia law; and (5) retaliation in violation of the First Amendment.  As to the municipal liability claim, which is the only cause of action pending against the City, Plaintiff contends that the alleged constitutional violations were (1) the result of the City's failure to properly train its officers in protecting citizens' First Amendment rights; and (2) done at the direction of Officer Gordon—a final policymaker for the City.

The City filed the instant Motion to Dismiss on August 5, 2024.  [Doc. 11]. The motion is now ripe for review.

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Traylor v. P'ship Title Co., 491 F. App'x 988, 989 (11th Cir. 2012). Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement. Id. Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted). At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," id., and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at 678). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, Powell v. Thomas, 643 F.3d 1300, 1302 (11th

Cir. 2011), a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, Iqbal, 556 U.S. at 678.

Accordingly, evaluation of a motion to dismiss requires two steps: (1) a court must eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are remaining well-pleaded factual allegations, a court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## DISCUSSION

Plaintiff asserts a single claim for municipal liability against the City. As a general rule, a municipality cannot be held vicariously liable for the actions of its employees under 42 U.S.C. § 1983. Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997). Instead, a municipality incurs liability only when the execution of its policy or custom constitutes the "moving force" that inflicts injury upon an individual in violation of her constitutional rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). As such, a successful Monell claim hinges upon a plaintiff's ability to show that a deprivation of constitutional rights occurred because of an official government policy or custom. Davis v. City of Apopka, 734 F. App'x 616, 619 (11th Cir. 2018). An official government policy that subjects a municipality to liability under § 1983 "can be a decision by a municipality's lawmaking body, an act by a policymaking official, or a municipal

custom—that is, a 'practice[ ] so persistent and widespread as to practically have the force of law.'" Sosa v. Martin County, 13 F.4th 1254, 1277 (11th Cir. 2021) (quoting Connick v. Thompson, 563 U.S. 51, 61 (2011)). In addition to these things, an official government policy may also be "a municipality's decision not to train employees on their legal duty not to violate citizens' rights." Id.

The City asserts that Plaintiff fails to state a viable Monell claim. Specifically, the City contends that Plaintiff has not alleged sufficient factual matter to establish liability under either a failure-to-train or final policymaker theory.

1. **Whether Plaintiff Pleads a Plausible Monell Claim Against the City Based on a Failure-to-Train Theory**

Plaintiff asserts that the City is liable under the Monell doctrine due to its failure to provide proper training. As stated previously, a municipality's decision not to train employees on their legal duty not to violate citizens' rights can constitute an official government policy subjecting the municipality to liability under § 1983. Importantly, to qualify as a policy, "the municipality's failure to train must 'evidence[ ] a deliberate indifference to the rights of its inhabitants.'" Id. (quoting Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1293 (11th Cir. 2009)). A plaintiff must therefore "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and . . . made a

5

deliberate choice not to take any action." Lewis, 561 F.3d at 1293.  This notice requirement may be satisfied by alleging "a pattern of similar constitutional violations by untrained employees."[2] Sosa, 13 F.4th at 1277.

In this case, Plaintiff asserts that "the City has a long history of not adequately training its officers when it comes to protecting and respecting citizens' First Amendment rights." [Doc. 1, p. 12].  Plaintiff supports this allegation by describing three different instances where protestors have been arrested under the pretext of violating the pedestrian in the roadway law:  (1) a January 2021 protest in Atlanta that resulted in an arrest of nineteen protestors; (2) a September 2021 protest where a dozen protestors were arrested; and (3) a September 2020 protest where at least one protestor was arrested.  Without any specificity, Plaintiff also asserts that many other protestors have been arrested under similar circumstances.

In its Motion to Dismiss, the City argues that because no other court has found that the City inadequately or negligently trained its officers as to citizens' First Amendment rights, Plaintiff cannot show deliberate indifference in this case. The Court disagrees that Plaintiff must show that another court made a finding of

---

[2] The notice requirement may also be satisfied "by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation." Mingo v. City of Mobile, 592 F. App'x 793, 799–800 (11th Cir. 2014).  Here, Plaintiff does not allege that the need to train police officers not to violate citizens' First Amendment rights was "so obvious."

inadequate training.  Rather, a plaintiff must only show that a defendant had notice by alleging a pattern of similar constitutional violations.  By referencing these other instances where protestors have been arrested, the Court finds that Plaintiff has done enough to allege a pattern of similar constitutional violations by untrained employees.  See Williams v. Fulton Cnty. Sch. Dist., 181 F. Supp. 3d 1089, 1122 (N.D. Ga. 2016) (holding that "one or two incidents . . . is generally insufficient to indicate a pattern," but on a motion to dismiss, "allegations of anything more than that are generally sufficient").  Ultimately, because Plaintiff alleges facts which demonstrate that the City was on notice of a need to train its officers on how to deal with peaceful protestors, Plaintiff's failure-to-train claim can proceed.  To the extent that the City argues otherwise, the motion is **DENIED**.

      **2.  Whether Plaintiff Pleads a Plausible Monell Claim Through the Acts of Officer Gordon as a Final Policymaker for the City**

In addition to her failure-to-train theory, Plaintiff also alleges that the City is liable under a final-policymaker theory.  Specifically, Plaintiff alleges that Officer Gordon, a final policymaker, gave an order to arrest all protestors.  A municipality may be liable for a single decision made by a municipal official when the official "is the final policymaker for the municipality with respect to the subject matter in question."  Mandel v. Doe, 888 F.2d 783, 793 (11th Cir. 1989).  An official is the final policymaker on a given subject matter when "his decisions have legal effect

7

without further action by the governing body" and "the governing body lacks the power to reverse the [official's] decision." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1292 (11th Cir. 2004).  Courts determine whether an official is a final policymaker for the municipality by examining "the relevant positive law, including ordinances, rules and regulations" as well as "customs and practices having the force of law." Mandel, 888 F.2d at 793.

    The Court recognizes that not all theories of municipal liability require a single final policymaker.  Indeed, a lesser official's decision may also subject a municipality to liability in two circumstances:  delegation and ratification.  As to delegation, a municipal officer who is not a final policymaker may nevertheless bind the municipality through a single act when that official was delegated the authority to make the decision by a final policymaker.  Ratlieff v. City of Fort Lauderdale, No. 22-CV-61029, 2023 WL 3750581, at *16 (S.D. Fla. June 1, 2023). Notably, "the mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority.  Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review." Mandel, 888 F.2d at 792. Ratification occurs "when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who

8

does have final policymaking authority." Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016).

The City argues that dismissal is required because Officer Gordon was not a final policymaker. The Court is not persuaded. In the Eleventh Circuit, to survive a motion to dismiss, a plaintiff need only "allege a policy, practice, or custom of the City" which caused the unconstitutional arrest. Id. at 1279. Importantly, "identifying and proving that a final policymaker acted on behalf of a municipality is 'an evidentiary standard, and not a pleading requirement.'" Id. at 1280.

Here, Plaintiff has sufficiently alleged that a policy, practice or custom of the City led to her arrest, which is all that is required at this stage of the proceedings. Indeed, Plaintiff alleged in her Complaint that the City "routinely arrests protestors under the pretext of violating pedestrian in the roadway laws."[3] [Doc. 1, p. 12]. Because Plaintiff plausibly set forth a policy, practice or custom that led to her arrest, dismissal is inappropriate at this time. See Gadomski v. City of Atlanta, No. 1:23-CV-4036, 2024 WL 3070182, at *3 (N.D. Ga. June 20, 2024) (determining that almost identical allegations survived a motion to dismiss). As such, to the extent that the City argues that dismissal is required because Plaintiff

---

[3] This allegation is supported by specific instances where other protestors were arrested under similar circumstances.

9

failed to show that Officer Gordon is a final policymaker, the motion is **DENIED**.[4] See Christmas v. Nabors, 76 F.4th 1320, 1329–30 (11th Cir. 2023) (rejecting argument that dismissal was required where the plaintiff failed to plausibly allege that a particular police officer was a final policymaker).

## CONCLUSION

For the reasons stated above, the City's Motion to Dismiss [Doc. 11] is **DENIED**.

Local Rule 16.2 requires parties to submit a Joint Preliminary Report and Discovery Plan. The parties are **HEREBY ORDERED** to file the Joint Preliminary Report and Discovery Plan no later than fourteen days from the date of this Order. The parties are notified that a failure to comply with this Order may result in sanctions, including dismissal. In the event a Joint Preliminary Report and Discovery Plan is not filed, the Clerk is **DIRECTED** to submit the case at the expiration of the applicable time period.

**SO ORDERED** this 16th day of December, 2024.

J. P. BOULEE
United States District Judge

---

[4] Although Plaintiff's Complaint withstands a Rule 12(b)(6) motion, the Court notes that Plaintiff will likely have to identify (and provide proof concerning) a single final policymaker in order to survive summary judgment or prevail at trial.