## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ASHLEY DIXON  and )
MELANIE SILVERSTEIN, )
)
    Plaintiffs, )
)    FILE NO. 1:24-cv-02061-JPB
v. )
)
CITY OF ATLANTA, )
OFFICER JEFF CANTIN, )
in his individual capacity, )
)
    Defendants. )

## CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED BRIEF

**COME NOW,** the City of Atlanta ("City") and Major Jeff Cantin ("Major Cantin"), collectively "City Defendants", and file this Motion for Summary Judgment and Brief in Support of the same. The undisputed material facts demonstrate that all causes of action against them should be dismissed as a matter of law.

## I.    STATEMENT OF THE CASE

Plaintiffs Ashley Dixon and Melanie Silverstein ("Plaintiffs") bring the instant action alleging that the City is liable under the *Monell* doctrine "for failure to provide proper training and because there was a decision by a final policy maker to

arrest Plaintiffs or to conduct arrests in cases such as Plaintiffs'."[1] Plaintiffs also allege that they are entitled to recovery against Major Cantin for violations of their First and Fourth Amendment rights, malicious prosecution, and retaliatory arrest.[2]

## II.    FACTUAL BACKGROUND

Plaintiffs allege that on May 14, 2022, at approximately 6:30PM they "walked through Atlanta neighborhoods" with approximately one-hundred and fifty (150) other persons engaged in protesting with signs, drums, and tree branches.[3] Plaintiffs both admit that at times, while participating in the protests, they marched in the streets.[4] The multitude of pedestrians in the roadways caused vehicular traffic to be blocked.[5]

Upon hearing that traffic was being blocked by pedestrians, Major Cantin rallied several APD units to deploy to the general area of the march.[6] Both Atlanta

---

[1] Doc. 1, Ashley Dixon's Complaint for Damages, hereinafter "*Dixon Complaint*", at ¶ 34; Doc. 1, Melanie Silverstein's Complaint for Damages, hereinafter "*Silverstein Complaint*", at ¶ 34.

[2] *See generally*, *Dixon Complaint*; *See generally, Silverstein Complaint.*

[3] *Dixon Complaint*, at ¶¶ 12 – 13; *Silverstein Complaint*, at ¶¶ 12 – 13.

[4] Deposition of Ashley Dixon, taken June 17, 2025, hereinafter "Dixon Depo.", attached hereto as Exhibit A, at 30:21 – 31:1; Deposition of Melanie Silverstein, taken June 17, 2025, hereinafter "Silverstein Depo.", attached hereto as Exhibit B, at 24:21 – 25.

[5] Deposition of Major Jeffrey Cantin, taken July 11, 2025, hereinafter "Cantin Depo.", attached hereto as Exhibit C, at 119:4 – 9.

[6] *Id*. at 55:24 – 58:10.

Police Department (APD) officers and Georgia State Patrol (GSP) officers responded to the area.[7] As officers instructed the pedestrians, many of which were protesters, to move out of the streets and onto the sidewalks, the protesters threw items in the street, moved electric bikes into the street to block officers, and yelled curse words at the officers.[8]

Plaintiffs allege that at some point during the march, APD Officer Gordon "acted as final policy maker for the City of Atlanta" and ordered the arrest of the protesters.[9] As a result, Plaintiffs were approached and handcuffed by Defendant Cantin.[10] They were later "brought to the Atlanta City Detention Center", fingerprinted, and processed.[11] Subsequently, on June 1, 2022, Plaintiffs allege that their charges were dismissed.[12]

However, discovery later revealed that: (1) Officer Gordon never ordered the arrest of Plaintiffs or any other pedestrians or protesters[13]; (2) Cantin detained or

---

[7] "Cop footage 1" Video, taken by Ryan Seal, hereinafter "Seal Video 1", attached hereto as Exhibit D.

[8] *Id*; "2 Cop attack" Video, taken by Ryan Seal, hereinafter "Seal Video 2", attached hereto as Exhibit E.

[9] *Dixon Complaint*, at ¶ 44; *Silverstein Complaint*, at ¶ 44.

[10] *Dixon Complaint*, at ¶¶ 16 – 17; *Silverstein Complaint*, at ¶¶ 16 – 17.

[11] *Dixon Complaint*, at ¶ 20; *Silverstein Complaint*, at ¶ 20.

[12] *Dixon Complaint*, at ¶ 22; *Silverstein Complaint*, at ¶ 22.

[13] Deposition of Officer Matthew Gordon, taken May 22, 2025, hereinafter "Gordon Depo.", attached hereto as Exhibit F, at 44:11 – 15; "Helicopter_Camera-

arrested Plaintiffs for violating O.C.G.A. § 40-6-96[14]; and (3) prior to May 14, 2022, Major Cantin had never heard of the Plaintiffs before.[15]

## III.    ARGUMENT AND CITATIONS OF AUTHORITY

### A. Standard of Review

Summary Judgment should be granted when "the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."[16]  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.[17]  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[18]  A fact is material if it may affect the outcome of the suit under the governing law.[19]

The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material facts that should be

---

2.ts" Video, hereinafter "Helicopter Camera", attached hereto as Exhibit G, at 1:49 – 2:19.

[14] Cantin Depo. 63:19 – 64:5, 86:2 – 13.

[15] *Id*. at 61:11 – 14.

[16] FED. R. CIV. P. 56(a).

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[18] *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

[19] *Allen v. Tyson Foods, Inc.*, 121 F. 3d 642, 646 (11th Cir. 1997).

decided at trial.[20] "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answer to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."[21] If the non-movant's response consists of nothing "more than a repetition of his conclusional allegations, summary judgment for the defendant [i]s not only proper, but required."[22]

### B. Major Cantin is Entitled to Qualified and Official Immunity.

#### 1. Qualified Immunity

The qualified immunity analysis consists of a preliminary inquiry, followed by two additional analyses. As a preliminary matter, the officer must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."[23] In this case, there is no dispute that Major Cantin was engaged in his discretionary function when arresting Plaintiffs.[24]

---

[20] *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[21] *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting *Celotex*, 477 U.S. at 324).

[22] *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

[23] *Lee*, 284 F.3d at 1194.

[24] *Hochstein v. Demings*, 723 Fed.Appx. 938, 945 (11th Cir. 2018)(Officer was engaged in discretionary function when he arrested Plaintiff).

Once it is established that the defendant was acting within his discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is *not* appropriate.[25] For the plaintiffs to establish that qualified immunity is not appropriate the plaintiffs must show: (1) a violation of a constitutional right **and** (2) the constitutional right at issue was clearly established at the time of the alleged misconduct.[26] "The burden thus lies with Plaintiffs to show that their arrest violated a constitutional right and that the right was clearly established at the time of the arrest."[27] "The judges of the district courts and the courts of appeals . . . [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[28]

In this case, Plaintiffs allege that their First and Fourth Amendment rights were violated. However, Plaintiffs have already conceded that they violated the law. Both Plaintiffs testified that they marched in the street while engaging in the May 14, 2022 protest.[29] Similarly, Major Cantin testified that not only did he have the collective knowledge from the APD undercover officer and helicopter that the

---

[25] *Id.* (emphasis added).
[26] *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018) (cert. denied).
[27] *Id.*
[28] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).
[29] Dixon Depo. 30:21 – 31:1; Silverstein Depo., 24:21 – 25

Plaintiffs were in the street, he also viewed them in the street as he approached their location.[30] O.C.G.A. § 40-6-96 makes it illegal for a "pedestrian to stand or stride along and upon an adjacent roadway unless there is no motor vehicle traveling within 1,000 feet of such pedestrian".[31] Thus, any argument that the Plaintiffs' arrests lacked probable cause and violated the Fourth Amendment is without merit.[32] Major Cantin knew, or reasonably believed, that Plaintiffs had committed a State law violation.[33] He is, therefore, entitled to qualified immunity against Plaintiffs' Fourth Amendment and malicious prosecution claims because he did not violate clearly established law.[34]

Similarly, Major Cantin is entitled to qualified immunity against Plaintiffs' First Amendment right claims. "[W]hen an officer has [at least] arguable probable cause to arrest, he is entitled to qualified immunity both from Fourth Amendment claims for false arrest and from First Amendment claims stemming from the arrest."[35] Thus, Plaintiff's First Amendment claims must also be dismissed as a matter of law because Major Cantin had probable cause for the arrests.

---

[30] Cantin Depo. 66:1 – 6, 69:19 – 70:17.

[31] O.C.G.A. § 40-6-96 (2025).

[32] Helicopter Camera, at 2:25 – 2:52 (showing the travel of a silver vehicle being impeded by the pedestrians in the roadway).

[33] *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022).

[34] *Id*.

[35] *Gates*, 884 F.3d 1298.

Additionally, "[t]o prevail on [a First Amendment retaliation claim] a plaintiff must first establish a 'causal connection' between the government defendant's 'retaliatory animus' and the Plaintiff's 'subsequent injury.'"[36] "Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."[37] Here, Plaintiffs have failed to show even a scintilla of evidence demonstrating "retaliatory animus". Major Cantin had no knowledge of either of the Plaintiffs prior to their arrest.[38] The record is also devoid of any evidence that Major Cantin conspired or planned prior to his arrival on scene to arrest Plaintiffs.[39] Finally, as it relates to Major Cantin, Plaintiffs have pointed out no evidence that he regularly or routinely arrested protesters for violating O.C.G.A. § 40-6-96. Thus, Plaintiffs cannot prove a "retaliatory motive" for the arrest carried out by Major Cantin and their retaliatory arrest claim fails as a matter of law.[40]

## 2. Official Immunity

Under Georgia law, official immunity "protects an officer from personal liability arising from his performance of official functions as long as the officer did

---

[36] *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019).

[37] *Id.*

[38] Cantin Depo, at 61:11 – 14.

[39] *Id.* at 81:7 – 19, 108:17 – 21, 128:16 – 129:3.

[40] *Nieves*, 587 U.S. at 398.

not act with actual malice or actual intent to cause injury."[41] "Similar to qualified immunity, official immunity is intended to 'preserve the public employee's independence of actions without fear of lawsuits and to prevent a review of his or her judgment in hindsight.'"[42] "Even when an arresting officer operates on a mistaken belief that an arrest is appropriate, official immunity still applies."[43]

Once it is established that the official was acting within the scope of their discretionary actions, plaintiff must prove that the accused official acted with "actual malice" or "actual intent to cause injury" to overcome official immunity.[44] "The Georgia Supreme Court has defined actual malice in this context to mean any 'deliberate intention to do wrong.'"[45]

> As such, actual malice is not established merely by showing that the defendant acted with ill will. Nor does actual malice encompass merely the reckless disregard for the rights and safety of others. Likewise, the phrase actual intent to cause injury—as used in Georgia's official immunity provision—means an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.[46]

---

[41] *Gates*, 884 F.3d. at 1304.

[42] *Id.* (*quoting Cameron v. Lang*, 274 Ga. 122, 122-23 (2001)).

[43] *Reed v. DeKalb Cty.*, 264 Ga. App. 83, 86 (2003).

[44] *Gates*, 884 F.3d at 1304 (*citing Adams v. Hazelwood*, 271 Ga. 414, 414-415 (1999)).

[45] *Id.* (*quoting Adams*, 217 Ga. 414).

[46] *Id.* (internal quotations marks omitted)(*citing West v. Davis*, 767 F.3d 1063, 1073 (11th Cir. 2014)).

In this context, the intent requirement denotes a wicked or evil motive.[47] "Evidence demonstrating frustration, irritation, and possibly even anger is not sufficient to penetrate official immunity."[48]  The Court's analysis is not backward looking to determine what the officer should have done, but is limited *only* to whether his or her behavior showed a deliberate intent to commit a wrongful act.[49]

In this case, Plaintiffs have presented no evidence of an intention to commit a wrongful act, ill will, or wicked motive. In fact, Major Cantin testified that we [APD] believe in the First Amendment rights"[50] and that arrests during protests are considered when protesters are "causing [] injuries or damage to the public"[51], engage in "violence"[52], or commit "multiple infractions"[53]. At most, Plaintiffs have demonstrated evidence of "frustration" and "irritation", which are insufficient to penetrate official immunity.[54] Thus, Major Cantin is entitled to official immunity against the State law claims as a matter of law.

---

[47] *Selvy v. Morrison*, 292 Ga. App. 702, 705 (2008).
[48] *Id.* at 706 (quoting *Title v. Corso*, 256 Ga. App. 859, 862 (1989)).
[49] *Id.* at 707 (emphasis in original).
[50] Cantin Depo., at 32:24 – 33:7.
[51] *Id*. at 32:7 – 23.
[52] *Id*.
[53] *Id*. at 132:2 – 18.
[54] *Selvy*, 292 Ga. App. at 706.

C. **<u>Plaintiffs Fail to State a Claim for § 1983 Liability.</u>**

To impose § 1983 liability on a municipality, a plaintiff must show: (1) that his [or her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.[55]  "A municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation'."[56] Where it is claimed that an employee was encouraged to act unlawfully by his or her recognition that the municipality would not act to stop such conduct, it must be shown that the municipality continued to adhere to an approach that it knew or should have known had failed to prevent tortious conduct in the past and was likely to result in such conduct in the future.[57] The municipality must have acted with deliberate indifference to the known or obvious consequences.[58] Here, Plaintiffs have not satisfied this standard as to the City.

In *Monell v. New York City Department of Social Services*, the United States' Supreme Court held that "municipalities and other local governmental bodies are

---

[55] *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

[56] *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (*quoting City of Canton,* 489 U.S. at 388-89).

[57] *Id.* at 407.

[58] *Id.*

'persons' within the meaning of § 1983."[59] The Supreme Court has "required a plaintiff seeking to impose liability on a municipality under §1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."[60] Subsequent U.S. Supreme Court cases have added a "practice" component to the required elements of a *Monell* claim.[61] Therefore, municipal liability under *Monell* requires a showing that a policy, practice, or custom of the municipality caused Plaintiff's alleged injury.[62]

In order to demonstrate the threshold requirement for *Monell* liability on the basis of a *policy*, Plaintiffs must demonstrate that the alleged injury resulted from the decisions of the municipality's duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.[63]  To establish the threshold requirement for *Monell* liability on the basis of a *custom*, Plaintiffs must demonstrate that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker … is so widespread as to have the force of law."[64] Finally, to establish the threshold requirement for *Monell* liability

---

[59] *Monell v. New York City Department of Social Services*, 436 U.S. 658, 689 (1978).
[60] *Bd. of the Cnty. Commissioners of Bryan Cnty, Okla. v. Brown,* 520 U.S. 397, 404 (1997).
[61] *Canton v. Harris*, 489 U.S. 378, 390 (1989).
[62] *Bd. of the Cnty. Commissioners,* 520 U.S. at 403.
[63] *Id*.
[64] *Id.* at 404.

on the basis of a *practice*, Plaintiffs must demonstrate that the municipality engaged in the persistent practice of unconstitutional deprivation.[65] "A showing of simple or even heightened negligence will not suffice."[66]

In this case, Plaintiffs assert that their First and Fourth Amendment constitutional rights have been violated. However, "it is not enough for a § 1983 plaintiff merely to *identify* conduct properly attributable to the municipality."[67] Plaintiffs must show that a constitutional violation occurred and that a municipal policy, practice, or custom was the *moving force* behind their injury.[68] Here, the Plaintiffs fall woefully short.

### 1. Plaintiffs have failed to present a valid claim for liability under § 1983 for any alleged act of a Final Policymaker.

The U.S. Supreme Court has held that, "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."[69] "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that

---

[65] *Monell*, 436 U.S. at 698.

[66] *Bd. of the Cnty. Commissioners*, 520 U.S. at 407.

[67] *Complaint* at ¶ 97-100; *Bd. of the Cnty. Commissioners*, 520 U.S. at 403-404.

[68] *Gold*, 151 F.3d at 1350.

[69] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83, (1986).

discretion."[70] "The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."[71] Here, Plaintiff alleges that the City Defendants unlawfully seized, maliciously prosecuted, and retaliated against them.[72] Furthermore, Plaintiffs' Complaints identify Officer Matthew Gordon as the person responsible for enforcing and allowing  such policy or custom.[73]

However, it is well established that the claimant must identify a final policymaker with policy-making authority over the entire governmental entity at issue and whose actions directly impacted the claimant.[74] State law determines whether a particular official has final policymaker authority for § 1983 purposes.[75] "Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[76]

---

[70] *Id.* (*See, e.g.*, Oklahoma City v. Tuttle, 471 U.S., at 822–824, (1985)).

[71] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483.

[72] *See generally*, *Dixon Complaint*; *See generally*, *Silverstein Complaint*.

[73] *Dixon Complaint*, at ¶ 44; *Silverstein Complaint*, at ¶ 44.

[74] *Grech v. Clayton Cty., Ga.,* 335 F.3d 1326, 1328 (11th Cir. 2003).

[75] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83, (1986).

[76] *Id.*

The fact that, "a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion".[77] Final Policymakers have final policy authority over the entire governmental entity and this category, as a matter of law, does not include governmental employees who report to superior authorities merely because they have any level of decision-making authority.[78]

Here, Plaintiffs allege that Officer Matthew Gordon, was a "final policy maker" and gave a dispersal order to arrest all protesters.[79] However, neither of the Plaintiffs heard Officer Gordon give the alleged order[80], Officer Gordon denies that he gave the order[81], and no order can be heard on the radio traffic of the incident[82]. Thus, Plaintiffs cannot point to a "final policymaker" responsible for giving the alleged "order to arrest".

As a result, Plaintiffs have failed to identify a final policymaker as defined by the U.S. Supreme Court in *Pembaur*. Therefore, Plaintiff's claims for municipal

---

[77] *Id.*

[78] *Id.*

[79] *Dixon Complaint*, at ¶ 44; *Silverstein Complaint*, at ¶ 44.

[80] Dixon Depo. 35:24 – 36:4; Silverstein Depo. 25:22 – 26:2.

[81] Gordon Depo. 44:11 – 15; Plaintiffs have dismissed Officer Gordon from the instant lawsuit for this very reason. *See* Doc. 43.

[82] Helicopter Camera, at 1:49 – 2:19.

liability against the City of Atlanta, under the theory of "final policymaker action" fail, and must, therefore, be dismissed.

Plaintiffs also fail to provide any evidence in support of "the [City] ha[ving] a custom or policy [or practice] that constituted deliberate indifference to [Plaintiffs'] constitutional right[s]"[83] or a failure to train. As mentioned above, no First or Fourth Amendment violation occurred because Major Cantin had probable cause, or at least arguable probable cause, to arrest Plaintiffs.[84] He also did not retaliate against Plaintiffs for their lawful exercise of their First Amendment rights.[85] Thus, Plaintiffs have failed to establish liability against the City on any grounds and all counts against the City must be dismissed as a matter of law.

## IV.   <u>CONCLUSION</u>

For the reasons stated within, as a matter of law, this action should be dismissed in total.  Plaintiffs' arrests were made with probable cause and did not violate Plaintiffs' First and/or Fourth Amendment rights. Moreover, Major Cantin is entitled to qualified immunity. Thus, as a matter of law, this cause of action is ripe for summary judgment and should be dismissed.

This 6th day of August 2025.

---

[83] *McDowell*, 392 F.3d at 1289.
[84] Cantin Depo. 63:19 – 64:5, 86:2 – 13.
[85] Cantin Depo., at 32:7 – 23, 32:24 – 33:7,132:2 – 18.

RESPECTFULLY SUBMITTED,

*/s/ Staci J. Miller*
**STACI J. MILLER**
Deputy Division Chief
Georgia Bar No. 601594
sjmiller@atlantaga.gov
(404) 546-4083 - *direct*
***Attorneys for City Defendants***


**CITY OF ATLANTA – DEPARTMENT OF LAW**
55 Trinity Avenue SW, Suite 5000
Atlanta, Georgia 30303
Office: (404) 546-4100 - *main*
Fax: 404-225-5756

17

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

ASHLEY DIXON  and            )
MELANIE SILVERSTEIN,         )
                             )
    Plaintiffs,          )
                             )    FILE NO. 1:24-cv-02061-JPB
v.                           )
                             )
CITY OF ATLANTA,             )
OFFICER JEFF CANTIN,         )
in his individual capacity,  )
                             )
    Defendants.          )

## CERTIFICATION

Counsel for the City Defendants hereby certifies that the foregoing has been prepared with Times New Roman font, 14 point, and therefore it complies with the requirements of L.R. 5.1(C).

This 6th day of August 2025.

                    **RESPECTFULLY SUBMITTED**,

                    */s/ Staci J. Miller*
                    **STACI J. MILLER**
                    Deputy Division Chief
                    Georgia Bar No. 601594
                    (404) 546-4083 *Direct*
                    sjmiller@atlantaga.gov
                    ***Attorneys for City Defendants***

**CITY OF ATLANTA DEPARTMENT OF LAW**
55 Trinity Avenue, SW, Suite 5000
Atlanta, Georgia 30303-3520
Office: (404) 546-4100 (*main*)
Fax: 404-225-5756

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ASHLEY DIXON  and<br>MELANIE SILVERSTEIN,     )<br>         )<br>     Plaintiffs,     )<br>        )<br>v.     )<br>        )<br>CITY OF ATLANTA,     )<br>OFFICER JEFF CANTIN,     )<br>in his individual capacity,     )<br>        )<br>     Defendants.     ) | FILE NO. 1:24-cv-02061-JPB |

## CERTIFICATE OF SERVICE

This is to certify that I have served the foregoing *CITY DEFENDANTS'*

*MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT* upon

opposing counsel listed below via this Court's CM/ECF system to ensure delivery

as follow:

**DRAGO CEPAR, JR., ESQ.**
**Drago Cepar Law**
1900 The Exchange, Suite 490
Atlanta, Georgia 30339

This 6th day of August 2025.

**RESPECTFULLY SUBMITTED,**

*/s/ Staci J. Miller*
**STACI J. MILLER**

20

Deputy Division Chief
Georgia Bar No. 601594
sjmiller@atlantaga.gov
(404) 546-4083 - *direct*
***Attorneys for City Defendants***

**CITY OF ATLANTA – DEPARTMENT OF LAW**
55 Trinity Avenue SW, Suite 5000
Atlanta, Georgia 30303
Office: (404) 546-4100 - *main*
Fax: 404-225-5756