UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ASHLEY DIXON,

        Plaintiff,

v.

CITY OF ATLANTA, et al.,

        Defendants.

CIVIL ACTION NO.:
1:24-CV-02061-JPB

## ORDER

This matter is before the Court on the City of Atlanta and Jeff Cantin's (collectively, "Defendants") Motion for Summary Judgment [Doc. 46]. This Court finds as follows:

## PROCEDURAL HISTORY

Ashley Dixon and Melanie Silverstein (collectively, "Plaintiffs") filed suit against Defendants in May 2024, and asserted the following causes of action, all of which relate to their arrest during a protest: (1) unlawful seizure in violation of the Fourth Amendment; (2) malicious prosecution in violation of the Fourth Amendment; (3) municipal liability; (4) malicious prosecution in violation of

Georgia law; (5) and First Amendment retaliation.[1]  [Doc. 1].  Defendants filed the instant Motion for Summary Judgment on August 6, 2025.  [Doc. 46].  The motion is now ripe for review.

## STATEMENT OF FACTS

The Court derives the facts of this case from Defendants' Statement of Undisputed Material Facts [Doc. 46-8], Plaintiffs' Statement of Additional Material Facts [Doc. 49-3] and the responses filed thereto [Doc. 49-2]; [Doc. 52-1].  The Court also conducted its own review of the record.

On May 14, 2022, Plaintiffs participated in a "Stop Cop City" protest with approximately 150 other people.[2]  [Doc. 49-2, pp. 1–2].  Protesters marched from Freedom Park to Inman Park carrying signs, tree branches and drums.  Id. Plaintiffs described the protest as "peaceful," while Cantin reported it as "a mix [of peaceful and violent]."  [Doc. 1, p. 5]; [Doc. 46-3, p. 133].  It is undisputed that protesters, including Plaintiffs, marched both in the streets and on sidewalks.

---

[1] Dixon and Silverstein brought two separate suits.  The Court consolidated the actions on December 20, 2024.

[2] The protesters were rallying against the development of a Public Safety Training Center for police officers.

Video evidence shows that protesters blocked traffic, at least at times, during their march through the streets.  [Doc. 46-4].

Cantin, a police officer employed by the City of Atlanta, led the protest response.[3]  [Doc. 49-3, p. 7].  Upon learning from other officers that the protesters were marching in the streets (instead of staying at Freedom Park), Cantin called for additional officers to assist him.  [Doc. 46-3, p. 61].  Once Cantin had the officers that he needed in place, he issued an order to arrest all the protesters for being in the roadway.[4]  [Doc. 49-3, p. 11].

Shortly after the protest was over, Cantin arrested Plaintiffs, who were on a sidewalk, for pedestrian on or along roadway in violation of O.C.G.A. § 40-6-96. [Doc. 49-2, p. 6]; [Doc. 49-3, p. 18].  Section § 40-6-96(b) states that "[w]here a sidewalk is provided, it shall be unlawful for any pedestrian to stand or stride along and upon an adjacent roadway unless there is no motor vehicle traveling within 1,000 feet of such pedestrian on such roadway."  According to Cantin, he arrested

---

[3] On the day in question, Cantin was head of the Strategic Response Section, which covered protest activity, the Public Safety Training Center, the drone unit, movies, movie permits and filming.  [Doc. 49-3, p. 3].

[4] Sometimes a "dispersal order" is given before protesters are arrested.  A dispersal order gives protesters the opportunity to leave the roadway within a certain amount of time to avoid arrest.  Although a dispersal order was discussed in this case, it is unclear whether one was given.  [Doc. 49-3, p. 10].

Plaintiffs, in part, because they crossed the street right in front of him.  [Doc. 49-3, p. 7].  In fact, Cantin claimed in his deposition that Plaintiffs were so close to his car that he had to hit his brakes to avoid hitting them.  Id. at 7–8.  Plaintiffs provided a differing account, however.  Although Plaintiffs admitted that they had been in the roadway at some points during the protest, Silverstein testified in her deposition that she never crossed the street with Dixon.  Id. at 17.  Moreover, Dixon provided testimony that when she was arrested, she was on the sidewalk and had been on the sidewalk "for a really long time."  [Doc. 46-1, p. 17].

　　Cantin also asserted in his deposition that he arrested Plaintiffs because they were part of the protest that had blocked the road.  [Doc. 46-3, p. 120].  Specifically, when asked whether he would have arrested Plaintiffs if they were just residents that lived in the area that happened to be in the roadway, Cantin seemingly implied that he would not have and explained that he "was looking for people that were in the roadway blocking Moreland. . . .  I was more worried about the fact that they blocked Ponce de Leon and Moreland Avenue during rush hour on a Saturday night."  Id. at 103.  Cantin admitted that at no time before arresting Plaintiffs did he ever personally observe Plaintiffs or get any information from undercover officers or the police helicopter about their specific behavior during the

protest.  [Doc. 49-3, p. 9].  He did, however, have information that the group of protesters had been in the street.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A material fact is any fact that "is a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Ultimately, "[t]he basic issue before the court on a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Allen, 121 F.3d at 646 (citation omitted).

The party moving for summary judgment bears the initial burden of showing that no genuine issue exists as to any material fact, "and in deciding whether the movant has met this burden[,] the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving

party." Id.  After the movant satisfies this initial burden, the nonmovant bears the burden of showing specific facts that indicate summary judgment is improper because a material issue of fact does exist.  Id.  However, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  If the record taken as a whole cannot lead "a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

Defendants move for summary judgment on all causes of action.  In the analysis below, the Court first addresses whether summary judgment is warranted as to the 42 U.S.C. § 1983 claims.

### I.    Federal Claims under 42 U.S.C. § 1983

Defendants argue that Cantin is entitled to qualified immunity as to the federal claims.  "Qualified immunity protects public officers from undue interference with their duties and from potentially disabling threats of liability."  Paez v. Mulvey, 915 F.3d 1276, 1284 (11th Cir. 2019) (citation modified).  As a result, qualified immunity shields "government officials performing discretionary

functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019).  Importantly, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Id.

"[T]o establish qualified immunity, a defendant first must show that [he] was acting within the scope of [his] discretionary authority at the time of the alleged misconduct."  Paez, 915 F.3d at 1284.  Once that burden is met,[5] "the burden shifts to the plaintiff to show that qualified immunity is not appropriate."[6] Id.  To do that, the plaintiff must show:  (1) that the defendant violated a constitutional right; and (2) that the violated right was clearly established at the time of the incident.  Id.  Crucially, "both elements of this test must be present for an official to lose qualified immunity."  Rivera v. Carvajal, 777 F. App'x 434, 437 (11th Cir. 2019) (citation modified).

---

[5] No dispute exists that Cantin was acting within his discretionary authority when he arrested Plaintiffs.

[6] Although Plaintiffs bear the burden in a qualified immunity analysis, the Eleventh Circuit Court of Appeals has held that defendants must "specifically and clearly" present their theories of qualified immunity to the district court.  WBY, Inc. v. DeKalb County, 695 F. App'x 486, 491–92 (11th Cir. 2017).

A.    <u>**Unlawful Seizure and Malicious Prosecution**</u>

Defendants contend that Plaintiffs' claims for unlawful seizure and malicious prosecution fail because Cantin had probable cause to arrest them. It is well settled that "the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." <u>Michigan v. DeFillippo</u>, 443 U.S. 31, 36 (1979). The Eleventh Circuit Court of Appeals has held:

> [p]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar. Far from requir[ing] convincing proof that [an] offense was committed, probable cause is a flexible and fluid concept, that looks instead to the totality of the circumstances to determine the reasonableness of the officer's belief that a crime has been committed. Accordingly, [t]he test for probable cause is not reducible to precise definition or quantification, and [f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision.

<u>Paez</u>, 915 F.3d at 1286 (alterations in original) (internal quotation marks and citations omitted). Probable cause "requires less than a preponderance of the evidence," and therefore it "does not require that it be more likely than not the person arrested for a crime is actually guilty of it." <u>Davis v. City of Apopka</u>, 78 F.4th 1326, 1334 (11th Cir. 2023). Indeed, "[p]robable cause exists where the facts within the collective knowledge of law enforcement officials, derived from

reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010).

Notably, where an officer has asserted qualified immunity, "an officer need not have actual probable cause, but only 'arguable' probable cause." Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as [the defendant] could have believed that probable cause existed to arrest [the plaintiffs.]" Id. (citation modified). This is the rule because "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." Id.

As stated previously, Cantin arrested Plaintiffs for pedestrian on or along roadway in violation of O.C.G.A. § 40-6-96, which provides that "[w]here a sidewalk is provided, it shall be unlawful for any pedestrian to stand or stride along and upon an adjacent roadway unless there is no motor vehicle traveling within 1,000 feet of such pedestrian on such roadway." [Doc. 49-2, p. 6]. Defendants contend that Cantin had probable cause, or at least arguable probable cause, to arrest Plaintiffs because he had information from other officers that the group of

protesters, not necessarily Plaintiffs specifically, were in the street marching and blocking traffic.[7]  Plaintiffs, on the other hand, argue that probable cause was lacking because Cantin did not have any specific information about them from undercover officers, the helicopter or otherwise.  The Court notes that neither party supported their respective arguments with case law or any other authority.

Kampas v. City of St. Louis, a recent decision from the Eighth Circuit Court of Appeals, is instructive, though not binding.  157 F.4th 937 (8th Cir. 2025).  There, the court considered challenges to a mass arrest that occurred during protests following the acquittal of a former police officer facing murder charges.  Id. at 940.  At that protest, a group of protesters marched onto the interstate and blocked traffic.  Id.  Similar to what happened here, upon learning that the group was on the interstate, a police chief authorized the arrests of individuals that participated in the protest.  Id.  Officers effectuated the arrests by encircling the group once they exited the interstate highway.  Id.  Several "legal observers," who were not part of the protest, were swept up in the arrest even though they "did not step foot onto" the interstate and "no officer saw them on the interstate."  Id.

---

[7] Defendants also argue that Cantin had probable cause to arrest Plaintiffs because they crossed the street right in front of his vehicle.  Because Plaintiffs provided evidence that they did not cross the street together, a genuine issue of material fact exists as to what Cantin saw.  Summary judgment is thus not appropriate on this basis.

The legal observers sued and claimed that their arrests were not supported by probable cause.  Id. at 942.  Recognizing the "practical dilemma faced by officers responsible for reacting to large group activity," the court disagreed.  Id. at 943.  The court held that "a requirement that officers verify that each and every member of a crowd engaged in a specific riotous act would be practically impossible in any situation involving a large riot."[8]  Id. (citation modified).  Consequently, the court determined that "the Fourth Amendment is satisfied if the officers have grounds to believe all arrested persons were a part of a *unit* observed violating the law."  Id.  (citation modified).[9]

In this case, it was objectively reasonable for Cantin to conclude that the marching protesters acted as a unit.  The undisputed evidence shows that Cantin was informed by other officers that everybody was in the road marching.  [Doc. 46-3, pp. 65–66].  More particularly, when Cantin was asked at his deposition

---

[8] No allegation exists in this case that the protesters were rioting.  Nevertheless, the case is instructive because it addresses probable cause when a large number of individuals conduct an activity together.

[9] The Court of the Appeals for the District of Columbia has articulated a similar rule.  Carr v. District of Columbia, 587 F.3d 401, 408 (D.C. Cir. 2009).  In that case, the court held that "[p]olice witnesses must only be able to form a reasonable belief that the entire crowd [acted as a unit]. . . .  A requirement that the officers verify that each and every member of a crowd engaged in a specific riotous act would be practically impossible in any situation involving a large riot, particularly when it is on the move."  Id.

whether he had seen Plaintiffs in the roadway, he responded, "[w]hen they were part of the march, I was told repeatedly that they were all in the road. And it's recorded on radio with the helicopter, so I used collective knowledge that everybody was in the road." Id. at 72.

While this Court acknowledges that Cantin and no other officer specifically observed or identified Plaintiffs as being in the street, it was objectively reasonable for Cantin to believe that Plaintiffs were part of the group of protesters that were in the roadway and blocking traffic. Indeed, Cantin's belief that Plaintiffs acted as part of the unit was reasonable because Cantin witnessed Silverstein, who was talking to Dixon, carrying a "Stop Cop City" protest sign immediately after the protesters dispersed. [Doc. 49-3, p. 12]. Like the officers in Kampas, Cantin was tasked with reacting to a "large group activity" in real time, rendering it unreasonable and impractical that he "verify that each and every" member of the group of protesters was one of the individuals in the roadway prior to effectuating the arrests for the unlawful activity. Ultimately, the Court is satisfied that Cantin reasonably believed that Plaintiffs were part of the unit that engaged in the unlawful activity of being in the roadway, and therefore the Court finds that Cantin had, at a minimum, arguable probable cause at the time of arrest to believe that Plaintiffs had committed the offense of pedestrian in a roadway. Therefore, to the

extent that Defendants seek summary judgment on the 42 U.S.C. § 1983 claims for

unlawful seizure and malicious prosecution, the motion is **GRANTED**.

### B.    <u>First Amendment Retaliation</u>

Defendants also assert that Cantin is entitled to qualified immunity as to

Plaintiffs' First Amendment retaliation claim wherein Plaintiffs argue that they

were arrested—not for being in the roadway—but in retaliation for exercising their

First Amendment rights.  "[T]he First Amendment prohibits government officials

from subjecting an individual to retaliatory actions for engaging in protected

speech." <u>Nieves v. Bartlett</u>, 587 U.S. 391, 398 (2019) (citation modified).  "To

prevail on [a First Amendment retaliation] claim, a plaintiff must establish a

'causal connection' between the government defendant's 'retaliatory animus' and

the plaintiff's 'subsequent injury.'" <u>Turner v. Williams</u>, 65 F.4th 564, 581 (11th

Cir. 2023).  Notably, "[i]t is not enough to show that an official acted with a

retaliatory motive and that the plaintiff was injured—the motive must *cause* the

injury." <u>Nieves</u>, 587 U.S. at 398.  Consequently, a plaintiff must show that, absent

the retaliatory motive, she would not have been arrested.  <u>Id.</u> at 399.  Even where

probable cause is present, a plaintiff can satisfy this burden by presenting

"objective evidence that [she] was arrested when otherwise similarly situated

individuals not engaged in the same sort of protected speech had not been."[10]

Turner, 65 F.4th at 586.

In their Motion for Summary Judgment, Defendants assert that Cantin is entitled to qualified immunity because "Plaintiffs have failed to show even a scintilla of evidence demonstrating 'retaliatory animus.'"  [Doc. 46, p. 8]. Specifically, Defendants claim that "Plaintiffs have pointed out no evidence that [Cantin] regularly or routinely arrested protesters for violating O.C.G.A. § 40-6-96." Id. at 8.  The Court disagrees that Plaintiffs failed to submit any evidence.

In the Court's view, Plaintiffs provided objective evidence that similarly situated individuals not engaged in the same sort of protected speech—speech against the Public Safety Training Center—had not been arrested.  Specifically, Cantin testified during his deposition that just a few days after the protest in question, he assisted with a Roe v. Wade protest.  [Doc. 52-1, p. 6].  Notably, no protesters, even though they were marching in the street like Plaintiffs, were arrested at the event.[11]  Id.  Given this objective evidence of similarly situated

---

[10] In Nieves, the Supreme Court of the United States used jaywalking as an example.  The Court explained that even where probable cause exists to support an arrest for jaywalking, arresting only those individuals who complain about police conduct may support a First Amendment retaliatory arrest claim.  587 U.S. at 407.

[11] In their reply brief, Defendants argue that the Court cannot consider the lack of arrests at the Roe v. Wade protest because no evidence was presented that the protesters there

individuals that had not been arrested, Defendants' Motion for Summary Judgment as to the First Amendment retaliation claim is **DENIED**.[12]

## II.   <u>Malicious Prosecution under Georgia Law</u>

Defendants contend that Cantin is entitled to official immunity as to Plaintiffs' state-law malicious prosecution claim.  "[O]fficial immunity applies to claims brought against public officers and employees in their individual capacities."  <u>Mommies Props., LLC v. Semanson</u>, 880 S.E.2d 376, 383 (Ga. Ct. App. 2022).  Under this type of immunity, an official "may not be held liable for injuries caused through his performance of discretionary functions unless he acts 'with actual malice or with actual intent to cause injury.'"  <u>Bailey v. Wheeler</u>, 843

---

blocked the roadway with items, damaged property or became violent with officers.  As an initial matter, a genuine issue of material fact exists as to whether the instant protest was peaceful or violent.  In any event, it is undisputed that Plaintiffs did not engage in any violent behavior or behavior that was any different from those protesting <u>Roe v. Wade</u>.  Accordingly, the Court is not convinced that the <u>Roe v. Wade</u> protest cannot be used for comparison purposes.

[12] Although the parties focus primarily on whether a constitutional violation occurred (i.e., First Amendment retaliation), the Court must still determine whether the right was clearly established at the time of the alleged conduct.  In light of <u>Nieves</u>, the Court finds that it was clearly established that an officer may not rely on probable cause to shield a retaliatory arrest where objective evidence shows that the offense is one for which individuals are ordinarily not arrested and that enforcement was triggered by protected speech.  587 U.S. at 407.  In short, <u>Nieves</u> squarely put officers on notice that such arrests violate the First Amendment.

F.3d 473, 485 (11th Cir. 2016).  Actual malice means "a deliberate intention to do a wrongful act" or do harm.  Cunningham v. Cobb County, 141 F.4th 1201, 1212 (11th Cir. 2025).  It does not include "the reckless disregard for the rights or safety of others."  Bailey, 843 F.3d at 485–86.  Actual intent to cause injury "means an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury."  West v. Davis, 767 F.3d 1063, 1073 (11th Cir. 2014) (citation modified).

Defendants argue that Cantin is entitled to official immunity because "Plaintiffs have presented no evidence of an intention to commit a wrongful act, ill will, or wicked motive."  [Doc. 46, p. 10].  Defendants further claim that any evidence of ill will is negated because Cantin believes in First Amendment rights.  Id.  Plaintiffs did not respond to this argument or address their malicious prosecution claim in any way.

"A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."  Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014).  Consequently, "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."  Id.; see also Johns v. CSX Transp., Inc., 210 F. Supp. 3d 1357, 1373 (M.D. Ga. 2016) (holding that "[w]hen a non-moving party fails to address

particular claims [raised] in the moving party's motion for summary judgment but responds to other arguments, the non-moving party abandons [those] claims"). Because Plaintiffs failed to respond, this Court finds that they abandoned their malicious prosecution claim.  See Clark v. City of Atlanta, 544 F. App'x 848, 855 (11th Cir. 2013) (finding that the plaintiffs' state law causes of action were abandoned because the plaintiffs failed to defend the claims in their response to the motion for summary judgment).  As such, to the extent that Defendants argue that Cantin is entitled to official immunity as to the malicious prosecution claim, the motion is **GRANTED**.

## III.  <u>Municipal Liability</u>

In Count III of their respective complaints, Plaintiffs asserted that the City of Atlanta is "liable under the <u>Monell</u> doctrine due to its failure to provide proper training and because there was a decision by a final [policymaker] to arrest Plaintiff[s] or to conduct arrests in cases such" as Plaintiffs.  [Doc. 1, p. 11].  As to Plaintiffs' assertion that the City of Atlanta is liable because there was a decision by a final policymaker, Plaintiffs specifically alleged that Officer Matthew Gordon made the decision to arrest the protesters in this case.[13]  Indeed, Plaintiffs asserted

---

[13] Gordon was originally named as a defendant in this case but was dismissed through a stipulation of dismissal on July 8, 2025.

that Gordon made the decision to "arrest all members of the group" and that Cantin acted pursuant to Gordon's instructions.  Id. at 19.

Defendants argue that they are entitled to summary judgment because Gordon did not make any arrest decisions in this case.[14]  Although Plaintiffs admit this fact, Plaintiffs insist that summary judgment is not proper because "Cantin, Deputy Chief Carven Tyus and Chief Schierbaum all qualify as final [policymakers] and were all involved in setting policy that resulted in the arrest of Plaintiffs."  [Doc. 49-1, p. 23].  Problematically for Plaintiffs, it is apparent to the Court that Plaintiffs have shifted their theory of liability for the City of Atlanta from Gordon acting as a final policymaker to a myriad of other individuals possibly acting as that person.  It is well settled that "a plaintiff cannot amend [her] complaint through argument made in [her] brief in opposition to the defendant's motion for summary judgment."  Miccosukee Tribe of Indians of Fla. v. United

---

[14] In one sentence, Defendants also state that "Plaintiffs also fail to provide any evidence in support of . . . a failure to train."  [Doc. 46, p. 16].  Because this argument is not supported either factually or legally, the Court does not have an obligation to consider it. Brewfab, LLC v. 3 Delta, Inc., 580 F. Supp. 3d 1201, 1208 (M.D. Fla. 2022) (holding that courts need not consider cursory arguments that are not supported); see also Maples v. Campbell, No. 5:03-CV-2399, 2006 WL 8438017, at *17 (N.D. Ala. Sept. 29, 2006) (finding that the court was not required to "consider unsupported and undeveloped issues").  Thus, to the extent that Defendants seek summary judgment on Plaintiffs' failure to train claim, the motion is **DENIED** as unsupported.

States, 716 F.3d 535, 559 (11th Cir. 2013). "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim [or theory of liability] is to amend the complaint in accordance with [the Federal Rules of Civil Procedure.]" Id. (citation modified). Thus, in light of the allegations in the Complaint that Gordon was the final policymaker, Defendants' Motion for Summary Judgment is **GRANTED** to the extent Defendants seek summary judgment as to this portion of the Monell claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. 46] is **GRANTED IN PART AND DENIED IN PART**. The parties are **HEREBY ORDERED** to file the Consolidated Pretrial Order required by Local Rule 16.4 within twenty-one days of entry of this Order. The parties are notified that a failure to comply with this Order may result in sanctions, including dismissal of the case or entry of default judgment. If a Consolidated Pretrial Order is not filed, the Clerk is **DIRECTED** to submit the case at the expiration of the twenty-one-day period.

The Court recognizes that the parties indicated in their Joint Preliminary Report and Discovery Plan that there was some possibility of settlement after discovery. Now that discovery has ended and the dipositive motion decided, if the

parties would like a stay of this deadline to allow them to conduct mediation, they may file a motion to that effect.  The parties are reminded that the Court can refer this case to mediation before a Magistrate Judge at no cost.

      **SO ORDERED** this 4th day of February, 2026.

_____
**J. P. BOULEE**
United States District Judge